FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 18, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

SHAWN PATRICK S., [1]

               Plaintiff,

   v.

KILOLO KIJAKAZI,[2]
COMMISSIONER OF SOCIAL
SECURITY,

               Defendant.

NO:  2:20-CV-0296-LRS

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 16, 17.  This matter was submitted for consideration without oral argument.  Plaintiff is represented by attorney Cory J. Brandt.  Defendant is represented by Special Assistant United States Attorney Jeffrey E. Staples.  The

---

[1] Plaintiff's last initial is used to protect his privacy.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  The Court therefore substitutes Kilolo Kijakazi as the Defendant and directs the Clerk to update the docket sheet.

ORDER - 1

Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, Plaintiff's Motion, ECF No. 16, is denied and Defendant's Motion, ECF No. 17, is granted.

## JURISDICTION

Plaintiff Shawn S. (Plaintiff), filed for supplemental security income (SSI) on November 2, 2017, and alleged an onset date of October 30, 2017. Tr. 93, 285-89. Benefits were denied initially, Tr. 193-96, and upon reconsideration, Tr. 199-201. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on February 11, 2019. Tr. 86-133. On April 18, 2019, the ALJ issued an unfavorable decision, Tr. 24-42, and on June 24, 2020, the Appeals Council denied review. Tr. 1-7. The matter is now before this Court pursuant to 42 U.S.C. § 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was born in 1967 and was 51 years old at the time of the hearing. Tr. 285. He graduated from high school and has two A.A. degrees in automotive technician and robotics technician. Tr. 432, 441. Plaintiff has work experience as loan consultant, electrical control systems designer, and fast food worker. Tr. 121-27. He testified he is limited by asthma, digestive issues, environmental and food allergies, MRSA, and excruciating pain in his back, Tr. 103-13. He has three to four "bad days" per month which wipe him out for two to three days afterward. Tr. 109.

ORDER - 2

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally

bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from

ORDER - 4

"any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the

claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

**ALJ'S FINDINGS**

At step one, the ALJ found Plaintiff did not engage in substantial gainful activity since October 30, 2017, the application date.  Tr. 29.  At step two, the ALJ found that Plaintiff has the following medically determinable impairments:  asthma, chronic allergies, chronic sinusitis, degenerative disc disease of the lumbar spine,

ORDER - 6

and irritable bowel syndrome.  Tr. 29.  At step three, the ALJ found that Plaintiff

does not have an impairment or combination of impairments that meets or medically

equals the severity of a listed impairment.  Tr. 32.

The ALJ then found that Plaintiff has the residual functional capacity to

perform light work except:

> the claimant can sit up to eight hours, and stand or walk at least six
> hours, of an eight-hour workday with normal breaks.  The claimant
> must avoid climbing ladders, ropes, or scaffolds, and can occasionally
> climb ramps or stairs.  The claimant can occasionally stoop, kneel,
> crouch, crawl, and balance.  The claimant must avoid unprotected
> heights and hazardous machinery, concentrated exposure to wetness
> and humidity, and avoid all exposure to respiratory irritants such as
> industrial fumes, odors, dusts, gasses, and poorly ventilated areas.

Tr. 32.

At step four, the ALJ found that Plaintiff is capable of performing past

relevant work as a CAD/CAM drafter.  Tr. 35.  Alternatively, at step five, after

considering the testimony of a vocational expert and Plaintiff's age, education, work

experience, and residual functional capacity, the ALJ found there are other jobs

existing in significant numbers in the national economy that Plaintiff can perform

such as routing clerk, mail clerk, and photocopy machine operator.  Tr. 36-37.  Thus,

the ALJ concluded that Plaintiff has not been under a disability, as defined in the

Social Security Act, since October 30, 2017, the date the application was filed.  Tr.

37.

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying supplemental security income under Title XVI of the Social Security Act.  ECF No. 16.  Plaintiff raises the following issues for review:

      1.    Whether the ALJ properly considered the medical opinion evidence;

      2.    Whether the ALJ properly considered Plaintiff's subjective testimony; and

      3.    Whether the ALJ properly conducted the step four analysis.

ECF No. 16 at 7.

## DISCUSSION

### A.    Opinion Evidence

Plaintiff contends the ALJ improperly rejected the opinions of Lynne Jahnke, M.D., Kim Chupurdia, Ph.D., and Gary Gleason, D.O.  ECF No. 16 at 9-13. Plaintiff also contends the opinion of David Colvin, ARNP, is relevant evidence. ECF No. 16 at 13.

For claims filed on or after March 27, 2017, new regulations changed the framework for evaluation of medical opinion evidence.  *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 416.920c.  The regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…"  *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. § 416.920c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from

ORDER - 8

medical sources.  20 C.F.R. § 416.920c(a) and (b).  The factors for evaluating the

persuasiveness of medical opinions and prior administrative medical findings

include supportability, consistency, relationship with the claimant (including length

of the treatment, frequency of examinations, purpose of the treatment, extent of the

treatment, and the existence of an examination), specialization, and "other factors

that tend to support or contradict a medical opinion or prior administrative medical

finding" (including, but not limited to, "evidence showing a medical source has

familiarity with the other evidence in the claim or an understanding of our disability

program's policies and evidentiary requirements").  20 C.F.R. § 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore

the ALJ is required to explain how both factors were considered.  20 C.F.R. §

416.920c(b)(2).  With regard to supportability, "[t]he more relevant the objective

medical evidence and supporting explanations presented by a medical source are to

support his or her medical opinion(s) or prior administrative medical finding(s), the

more persuasive the medical opinions or prior administrative medical finding(s) will

be." 20 C.F.R. § 416.920c(c)(1)-(2).  With regard to consistency, "[t]he more

consistent a medical opinion(s) or prior administrative medical finding(s) is with the

evidence from other medical sources and nonmedical sources in the claim, the more

persuasive the medical opinion(s) or prior administrative medical finding(s) will be."

20 C.F.R. § 416.920c(c)(1)-(2).

The ALJ may, but is not required, to explain how other factors were

considered.  20 C.F.R. § 416.920c(b)(2).  However, when two or more medical

opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. § 416.920c(b)(3).

      *1.    Gary Gleason, D.O.*

      Dr. Gleason began treating Plaintiff in November 2017 and completed a Physical Residual Functional Capacity Questionnaire form in March 2018. Tr. 392, 446-49. Dr. Gleason diagnosed asthma and allergies and opined that Plaintiff's symptoms would cause frequent interference with attention and concentration in performing simple work tasks. Tr. 447. Dr. Gleason opined that Plaintiff could lift up to ten pounds, stand and walk for about four hours, and sit for about six hours in a workday. Tr. 447. He also assessed environmental and postural limitations and indicated that Plaintiff would miss four or more days of work per month. Tr. 448-49.

      The ALJ found that Dr. Gleason's opinion is partially persuasive and that some level of limitation is clearly indicated, but that Dr. Gleason overstated Plaintiff's functional limitations. Tr. 35. First, the ALJ found Dr. Gleason's opinion is not supported by analysis or citation to treatment notes supporting the assessed limitations. Tr. 34. As noted *supra*, a medical opinion is more persuasive when the source provides relevant objective medical evidence and supporting explanations. 20 C.F.R. § 416.920c(c)(1)-(2). Indeed, Dr. Gleason's opinion contains no observations or objective findings and no explanation of the basis for

ORDER - 10

the limitations assessed.  Without citing any authority or the record, Plaintiff

argues Dr. Gleason's treatment notes provide support for the opinion.  However,

the ALJ addressed Dr. Gleason's treatment notes and found they contain limited

exam findings which are more consistent with light exertion work than the

limitations he assessed.  Tr. 34; *see* Tr. 450-56, 463-82.  This finding is supported

by substantial evidence.

Second, the ALJ found Dr. Gleason's opinion is inconsistent with his own

findings and other evidence in the record.  Tr. 34-35.  A medical opinion is more

persuasive when it is consistent with evidence from other medical and nonmedical

sources.  20 C.F.R. § 416.920c(c)(1)-(2).  As mentioned, *supra*, the ALJ observed

that Dr. Gleason's exam findings were limited and are more consistent with light

exertion work than with the limitations he assessed.  Tr. 34; *see* Tr. 450-56, 463-

82.  Additionally, the ALJ noted that Dr. Gleason indicated that Plaintiff's

symptoms "date back to early childhood," Tr. 449, which means that Plaintiff

worked at substantial gainful activity with those symptoms for many years.  Tr. 34-

35; *see* Tr. 299-300.  On reply, without citing the record, Plaintiff argues that even

though he was able to work for many years, "his symptoms were exacerbated by an

increase in allergies."  ECF No. 18 at 10.  However, the ALJ found that there is no

indication of a significant increase in symptomology.  Tr. 33.  Further, the ALJ

found that the opinions of Dr. Weir, whose opinion was "significantly persuasive,"

and Dr. Jahnke, whose opinion was "highly persuasive," are better supported and

more consistent with the entire record.  Tr. 35.  The ALJ's reasoning is supported

by substantial evidence.

2.    *Lynne Jahnke, M.D.*

Dr. Jahnke, the medical expert, testified that Plaintiff has severe impairments

of asthma and chronic sinusitis.  Tr. 93-94.  She opined Plaintiff could lift up to 10

pounds frequently and 20 pounds occasionally; has no limitations on standing or

walking; could occasionally climb stairs and ramps but never climb ladders or

scaffolds; should avoid unprotected heights; and should avoid exposure to dust,

odors, fumes, humidity, and pulmonary irritants.  Tr.  95-96.

As noted *supra*, the ALJ found Dr. Jahnke's testimony to be highly

persuasive.  Tr. 34.  The ALJ found that notwithstanding Dr. Jahnke's opinion that

Plaintiff's lumbar spondylitis and digestive problems are not severe impairments,

Tr. 94-95, when viewing the evidence in the light most favorable to Plaintiff, there

are sufficient limitations from those conditions to be found severe.  Tr. 34.  The

ALJ noted that Dr. Jahnke's testimony that Plaintiff could perform a range of light

work formed the basis for and is generally consistent with the RFC finding.  Tr. 34,

95-96.

Plaintiff contends that despite giving significant weight to Dr. Jahnke's

opinion, the ALJ "improperly rejected" it by omitting some of the limitations

assessed from the RFC.  ECF No. 16 at 9.  During cross-examination, Dr. Jahnke

was asked about Dr. Gleason's opinion that Plaintiff's attention and concentration

would be frequently interrupted, and he would need four ten-minute breaks per

ORDER - 12

day.  Dr. Jahnke testified that, "With allergies, sinusitis, and asthma, he just feels

miserable.  The [treating] doctor is more sensitive to that than I can be objectively"

Tr. 99.  Counsel then stated, "So if he is miserable, he is likely to not feel well and

be off task and not able to concentrate," and Dr. Jahnke responded by saying,

"[y]es, good point."  Tr. 99.  Dr. Jahnke was also asked about Dr. Gleason's

opinion that Plaintiff would miss four or more days of work per month.  Tr. 99.

Dr. Jahnke testified, "I do not have a sense of that on the record. . .. So I think he

may miss several days a month but I would trust his primary doctor's assessment

of that."[3]  Tr. 99-100.

　　　　Plaintiff contends this testimony indicates additional limitations not addressed

by the ALJ in evaluating Dr. Jahnke's opinion.  ECF No. 16 at 9-10.  However, this

argument fails for several reasons.  First, Dr. Jahnke's statements do not constitute

an assessment of functional limitations.  The ALJ is not required to incorporate

limitations phrased equivocally into the RFC.  *Id.*; *Glosenger v. Comm'r of Soc. Sec.

Admin.*, 2014 WL 1513995 at *6 (D. Or. April 16, 2014) (affirming the ALJ's

rejection of limitations prefaced with language such as "might," "may," or "would

also likely require").  Statements including such language may be excluded by an

ALJ because they are not diagnoses or descriptions of a plaintiff's functional

---

[3] On reply, Plaintiff takes Dr. Janke's testimony out of context which makes it

appear less equivocal than it is.  ECF No. 18 at 10.

ORDER - 13

capacity. *See Valentine*, 574 F.3d at 691-92.  Dr. Jahnke's statements regarding attention and concentration and missing work were responses to questions about Dr. Gleason's opinion and suggest that she did not see support for those limitations in the record, so she would defer to the treating physician.  This does constitute additional limitations assessed by Dr. Jahnke and the ALJ properly excluded them.

Further, as discussed *supra*, Dr. Gleason's opinion was properly found to be less persuasive because it overstates the limitations supported by the record. Lastly, with regard to concentration and attention, the ALJ made a properly supported finding which is not challenged by Plaintiff that Plaintiff has no limitation in concentration, persistence, and pace.  Tr. 31.  For these reasons, the ALJ's consideration of Dr. Jahnke's opinion is supported by substantial evidence.

3.    *Kim Chupurdia, Ph.D.*

Dr. Chupurdia examined Plaintiff and prepared a mental evaluation report in February 2018.  Tr. 431-44.  She diagnosed dysthymia and anxiety disorder, not otherwise specified.  Tr. 434.  Dr. Chupurdia opined that Plaintiff has the ability to reason and understand, has some adaptation skills, can concentrate and persist, and has intact memory. Tr. 434.  She noted that Plaintiff reports difficulty following through on tasks at home and difficulty in a work environment.  Tr. 434.  Dr. Chupurdia found moderate impairment in Plaintiff's ability to interact with coworkers and the public based on anxiety over possible physical symptoms; in the ability to maintain regular attendance due to Plaintiff's mood symptoms and tendency to isolate himself from others; in the ability to maintain a normal

ORDER - 14

workday and workweek without interruption from mood symptoms; and in the ability to deal with stress in the workplace if it involves leaving his home and being around other people.  Tr. 434.

First, the ALJ found Dr. Chupurdia's opinion is not persuasive because it is not consistent with her own evaluation.  Tr. 34.  A medical opinion is more persuasive when the source provides relevant objective medical evidence and supporting explanations.  20 C.F.R. § 416.920c(c)(1)-(2).  The ALJ observed that Dr. Chupurdia found Plaintiff had no ongoing mental health treatment, had normal thought content, stream of thought, orientation, memory, fund of knowledge, concentration, abstract thinking, insight, and judgment.  Tr. 34, 433-34.  The ALJ found that Dr. Chupurdia appeared to rely on Plaintiff's subjective allegations rather than objective or observational findings and that a portion of the functional assessment involves Plaintiff's description of symptoms rather than her findings.  Tr. 34, 434.

Plaintiff contends the ALJ did not explain the basis for this finding.  ECF No. 16 at 10.  However, the ALJ's explanation that Dr. Chupurdia's functional assessment includes some of Plaintiff's description of symptoms rather than her opinion is supported by the record.  Dr. Chupurdia's functional assessment includes phrases such as, "[t]he claimant describes a great deal of difficulty" and "[h]e describes" which indicates that the resultant limitations assessed arise from Plaintiff's own statements.  Tr. 434.  Furthermore, the ALJ also cited the benign objective and observational findings in the mental status exam as another basis for

ORDER - 15

concluding that the opinion is unsupported and is therefore less persuasive.  Tr. 34, 433.

Second, the ALJ found Dr. Chupurdia's opinion is not persuasive because it directly conflicts with Plaintiff's testimony that he is not significantly limited by mental health problems.  Tr. 34.  A medical opinion is more persuasive when it is consistent with evidence from other medical and nonmedical sources.  20 C.F.R. § 416.920c(c)(1)-(2).  Plaintiff testified that he was not seeking mental health treatment or taking any medication for anxiety or depression and that "stress is a factor for my issues . . . [b]ut I would not call mental impairment being a factor."  Tr. 114.  Plaintiff contends this statement "is a factor consistent with an attempt to avoid a mental health stigma," ECF No. 16 at 11, but Plaintiff does not cite any support for this assumption in the record and the court finds none.

Additionally, the ALJ found Dr. Chupurdia's opinion is unsupported by the overall record.  Tr. 34.  The ALJ discussed the mental health evidence, or lack thereof, in detail in finding that Plaintiff does not have a severe mental health impairment, a finding that is not challenged by Plaintiff.  Tr. 30-31.  The ALJ's reasonably found Dr. Chupurdia's opinion conflicts with other evidence in the record, and this is a legitimate reason for finding the opinion less persuasive.

### 4.    David Colvin, ARNP

Plaintiff contends a May 4, 2020, opinion from David Colvin, ARNP is relevant evidence.  ECF No. 16 at 13.  This opinion was first submitted to the Appeals Council and was not part of the record before the ALJ.  *See* Tr. 2.

ORDER - 16

Pursuant to 20 C.F.R. § 416.1470(a)(5), the Appeals Council will review a case at a party's request or on its own motion when it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." The Appeals Council declined review of the ALJ's decision and found that Mr. Colvin's opinion does not relate to the relevant period because it is dated after April 23, 2019, the date of the ALJ's decision.  Tr. 2.

When the Appeals Council declines review, the ALJ's decision becomes the final decision of the Commissioner, and the district court reviews that decision for substantial evidence, based on the record as a whole.  *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161-62 (9th Cir. 2012) (citation omitted).  When the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence.  *Id.* at 1163.  Here, the Appeals Council did not consider the evidence except to determine that it does not relate to the period at issue and did not add it as an exhibit in the administrative record.  Tr. 5-6; *see Bales v. Berryhill*, 688 F. App'x. 495, 496 (9th Cir. 2017) (unpublished) (determining that when the Appeals Council found that the new medical records did not "relate to the period on or before the date of the administrative law judge hearing decision," and did not, therefore consider these records, the records did not become part of the

ORDER - 17

1  administrative record); *Ruth v. Berryhill*, No. 1:16–CV–0872–PK, 2017 WL

2  4855400 (D. Or. Oct. 26, 2017) (citing other district court decisions in the Ninth

3  Circuit holding that that new evidence that the Appeals Council looked at and then

4  rejected did not become part of the administrative record subject to the Court's

5  substantial evidence review).

6  　　　To the extent Petitioner disagrees with the reason the Appeals Council

7  provided for refusing to consider and exhibit the newly submitted evidence,

8  Plaintiff should have requested a remand for the ALJ to consider the new

9  evidence.  *See Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1233 (9th

10  Cir. 2011) ("Where the Appeals Council was required to consider additional

11  evidence, but failed to do so, remand to the ALJ is appropriate so that the ALJ can

12  reconsider its decision in light of the additional evidence."); *see also* 42 U.S.C. §

13  405(g) (permitting a court to remand a case "upon a showing that there is new

14  evidence which is material and that there is good cause for the failure to

15  incorporate such evidence into the record in a prior proceeding"). However,

16  Plaintiff has not cited any authority, made any such argument, or requested such

17  relief.  ECF No. 16 at 13, 19.

18  　　　Plaintiff simply argues the opinion is relevant because Mr. Colvin indicated

19  the symptoms and limitations described had existed since 2012. ECF No. 16 at 13.

20  However, the records submitted with Mr. Colvin's opinion are dated December 13,

21  2019, and January 24, 2020.  They indicate no findings, objective or observational,

supporting the level of limitations assessed by Mr. Colvin and do not reflect that he

ORDER - 18

reviewed any records supporting the conclusion that such limitations existed since 2012. Tr. 13-15, 18. Furthermore, Plaintiff offers no reason to believe the ALJ, having already found his symptoms were not as severe as alleged, would have adopted a retroactive opinion based essentially on Plaintiff's self-report that the symptoms and limitations assessed by Mr. Colvin existed since 2012. Thus, ALJ's RFC determination based on the hearing testimony, the medical record, and the medical opinions is supported by substantial evidence without regard to Mr. Colvin's opinion.

**B.      Symptom Testimony**

Plaintiff contends the ALJ erred by rejecting his symptom testimony. ECF No. 16 at 13-16. An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

ORDER - 19

rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

citations and quotations omitted). "General findings are insufficient; rather, the

ALJ must identify what testimony is not credible and what evidence undermines

the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th

Cir. 1995)); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)

("[T]he ALJ must make a credibility determination with findings sufficiently

specific to permit the court to conclude that the ALJ did not arbitrarily discredit

claimant's testimony."). "The clear and convincing [evidence] standard is the most

demanding required in Social Security cases." *Garrison*, 759 F.3d 995, 1015 (9th

Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th

Cir. 2002)). In assessing a claimant's symptom complaints, the ALJ may consider,

*inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the

claimant's testimony or between her testimony and her conduct; (3) the claimant's

daily living activities; (4) the claimant's work record; and (5) testimony from

physicians or third parties concerning the nature, severity, and effect of the

claimant's condition. *Thomas*, 278 F.3d at 958-59.

First, the ALJ found the objective record lacks findings consistent with the

level of limitations alleged. Tr. 33. An ALJ may not discredit a claimant's pain

testimony and deny benefits solely because the degree of pain alleged is not

supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857

(9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v.

Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a

ORDER - 20

relevant factor in determining the severity of a claimant's pain and its disabling

effects. *Rollins*, 261 F.3d at 857.  Minimal objective evidence is a factor which

may be relied upon in discrediting a claimant's testimony, although it may not be

the only factor. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).  The

ALJ observed that despite the allegation of disabling asthma and allergies,

Plaintiff's respiration was normal at multiple visits in the limited record.  Tr. 33

(citing 383, 389, 408, 412, 415, 425, 443, 453, 464, 467, 469, 475).  The ALJ

noted some abnormal findings, Tr. 33 (citing Tr. 391, 417), but found they do not

demonstrate persistence and consistency of symptoms across the record.  Tr. 33.

The ALJ also noted spirometry testing suggested only possible early obstructive

pulmonary impairment and mild dysfunction.  Tr. 33 (citing Tr. 373, 430).

With respect to Plaintiff's back impairment, the ALJ noted Plaintiff

demonstrated normal gait, station, range of motion of the lumbar spine, and had

negative straight leg raise testing on examinations.  Tr. 33 (citing Tr. 383, 408,

425, 443-44).  The ALJ found that although Plaintiff was noted to use a cane on

occasion, there is no evidence Plaintiff's use of a cane is medically necessary.  Tr.

33, 431, 448; *see Chaudry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (holding

ALJ need not provide for use of an assistive device in the RFC if there is no

evidence it is medically necessary).[4]  Regarding Plaintiff's digestive symptoms, the

---

[4] Plaintiff cites a December 30, 2019, record from David Colvin ARNP, to support

the use of a cane.  ECF No. 16 at 16 (citing Tr. 9).  However, for the same reasons

ALJ found that Plaintiff received treatment and reported "minor episodes" about once every three months since he changed his diet.  Tr. 33 (citing Tr. 375).  The records cited by the ALJ support the conclusion that the observational and objective record lacks findings consistent with the level of limitation alleged.  Plaintiff asserts that the "often-benign findings in the record were consistent with the claimant's inability to see the doctor on bad or even moderate days, when his symptoms prevented him from leaving his house or his bathroom."  ECF No. 16 at 15.  This assertion is not supported by the record and there is no objective evidence supporting symptoms of that degree.

Second, the ALJ found there is very little treatment documented for Plaintiff's physical complaints and virtually no treatment for his mental health complaints.  Tr. 33.  Medical treatment received to relieve pain or other symptoms is a relevant factor in evaluating pain testimony.  20 C.F.R. § 416.929(c)(3)(iv)-(v).  The ALJ is permitted to consider the claimant's lack of treatment in evaluating symptom claims.  *Burch*, 400 F.3d at 681.  The ALJ found the lack of treatment was unexpected given the severity of the symptoms alleged.  Tr. 33.  Plaintiff contends Dr. Jahnke, the medical expert, indicated that the limited treatment record

---

discussed *supra*, the Court concludes the record from Mr. Coleman does not impact the ALJ's finding.

ORDER - 22

1   is "because when he feels bad, he does not feel up to a visit with a doctor." ECF

2   No. 16 at 15 (citing Tr. 100). However, Dr. Jahnke actually testified, "this

3   claimant does not go to the doctor a whole lot. . . . so I think when he feels bad [he

4   is] not going to see a doctor's visit necessarily." Tr. 100. Dr. Jahnke did not

5   suggest that Plaintiff is at times too ill to see a doctor, a proposition which has no

6   foundation in the medical record, and this does not reasonably explain the paucity

7   of medical treatment.

8          Plaintiff notes that where the evidence suggests lack of mental health

9   treatment is part of a claimant's mental health condition, it may be inappropriate to

10  consider a claimant's lack of mental health treatment as evidence of a lack of

11  credibility. ECF No. 16 at 15 (citing *Regennitter v. Comm'r of Soc. Sec. Admin.*,

12  166 F.3d 1294, 1299-1300 (9th Cir. 1999)); *see also Nguyen v. Chater*, 100 F.3d

13  1462, 1465 (9th Cir. 1996). Notwithstanding, when there is no evidence

14  suggesting a failure to seek treatment is attributable to a mental impairment rather

15  than personal preference, it is reasonable for the ALJ to conclude that the level or

16  frequency of treatment is inconsistent with the level of complaints. *Molina*, 674

17  F.3d at 1113-14. Here, as the ALJ observed, there is no mental health treatment in

18  the record. Tr. 33. There is no evidence that any failure to seek treatment is

19  attributable to a mental impairment. Furthermore, Plaintiff did not challenge the

20  ALJ's finding that Plaintiff's medically determinable mental impairments are

21  nonsevere. Tr. 30-31. The ALJ's finding is reasonable and this is a clear and

    convincing reason supported by substantial evidence.

ORDER - 23

Third, the ALJ found Plaintiff worked in the past with his most limiting condition. Tr. 33. The claimant's work record is an appropriate consideration in weighing the claimant's symptom complaints. *Thomas*, 278 F.3d at 958-59. The ALJ noted that Plaintiff's most limiting condition is purportedly asthma but observed that Plaintiff has had asthma his entire life and was able to work consistently through 2009. Tr. 33 (citing Tr. 299-300). Without citing the record, Plaintiff claims his asthma has been exacerbated by allergies in recent years and that the combination of his asthma and his more recently developed gastrointestinal condition prevent him from working. ECF No. 16 at 16. As the ALJ pointed out, however, that there is no indication of a significant increase in symptomology, which makes the alleged inability to work due to asthma less persuasive. Tr. 33. This is a clear and convincing reason supported by substantial evidence.

## C.    Step Four

Plaintiff also contends the ALJ erred at step four by failing to identify the specific demands of Plaintiff's past relevant work and by failing to properly compare the specific demands of Plaintiff's past work and her functional limitations. ECF No. 16 at 16-19. The regulations provide, "[a]t the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled." 20 C.F.R. § 416.920(a)(4)(iv). The burden of proof lies with the Plaintiff at step four, but the ALJ still has a duty to make the requisite factual findings to support his

conclusions. *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001); *see also* SSR 82-62 (1982) at *4, *available at* 1982 WL 31386.

The ALJ must make the following specific findings of fact: (1) a finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental demands of the past job/occupation; and (3) a finding of fact that the individual's RFC would permit a return to his or her past job or occupation. SSR 82-62 at *4.

Here, the ALJ first found Plaintiff has the RFC to perform light work, except that he can sit up to eight hours and stand or walk at least six hours of an eight-hour workday with normal breaks, must avoid climbing ladders, ropes, or scaffolds, can occasionally climb ramps or stairs, can occasionally stoop, kneel, crouch, crawl, and balance,  must avoid unprotected heights and hazardous machinery, concentrated exposure to wetness and humidity, and must avoid all exposure to respiratory irritants such as industrial fumes, odors, dusts, gasses, and poorly ventilated areas. Tr. 32.  Second, based on the testimony of the vocational expert, the ALJ found that Plaintiff's past relevant work as a CAD/CAM drafter was classified as SVP 5, exertionally light, skilled, as generally performed under the relevant regulations.[5] Tr. 35-36; *see* 20 C.F.R. § 416.967(b)-(c).  Third, based on the vocational expert's testimony, the ALJ found that Plaintiff's RFC allowed him to perform his past relevant work as a CAD/CAM draft as generally performed in the national economy.

[5] Social Security regulations classify work by physical exertion requirements and skill requirements.  20 C.F.R. § 416.967.

ORDER - 25

Tr. 36.  The ALJ's findings were therefore consistent with the requirements of S.S.R. 82-62.[6]

The ALJ's findings at step four are supported by substantial evidence and are legally sufficient.  Moreover, even assuming, *arguendo*, that the ALJ erred at step four; any error would be harmless because at step five the ALJ properly found that, alternatively, there are other jobs that existed in significant numbers in the national economy that Plaintiff could perform, including: routing clerk, mail clerk, and

---

[6] Plaintiff cites *Pinto* and asserts the ALJ "allowed the remainder of the RFC assessment to take place solely in the vocational expert's head."  ECF No. 16 at 17-18, citing 249 F.3d 840.  However, the ALJ in *Pinto* made findings which deviated from the Dictionary of Occupational Titles without explanation and failed to make specific findings of fact about the claimant's abilities.  249 F.3d at 847.  In this case, the vocational expert testified that she would identify any testimony which deviated from the DOT, but no such deviation was indicated.  Tr. 120, 129-30.  The ALJ also found the vocational expert's testimony was not inconsistent with the DOT.  Tr. 36.  As a result, the vocational expert made no assessment "in her head" which is not verifiable by consulting the DOT.  Plaintiff does not identify any testimony or finding that is in fact inconsistent with the DOT.  The ALJ made the requisite findings of fact with sufficient specificity for the Court to review.

ORDER - 26

1  photocopy machine operator.  Tr. 36-37; *see Tommasetti v. Astrue*, 533 F.3d 1035,

2  1042 (9th Cir. 2008).

3      Plaintiff also argues the ALJ erred because the vocational expert's opinion

4  was based on an incomplete hypothetical.  ECF No. 16 at 18.  The ALJ's

5  hypothetical must be based on medical assumptions supported by substantial

6  evidence in the record which reflect all of a claimant's limitations.  *Osenbrook v.*

7  *Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).  The hypothetical should be "accurate,

8  detailed, and supported by the medical record."  *Tackett*, 180 F.3d at 1101.  The

9  ALJ is not bound to accept as trued the restrictions presented in a hypothetical

10  question propounded by a claimant's counsel.  *Osenbrook*, 240 F.3d at 1164;

11  *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989); *Martinez v. Heckler*,

12  807 F.2d 771, 773 (9th Cir. 1986).  The ALJ is free to accept or reject these

13  restrictions as long as they are supported by substantial evidence, even when there

14  is conflicting medical evidence.  *Magallanes*, 881 F.2d at *id.*

15      Plaintiff's argument assumes that the ALJ erred in considering the medical

16  opinion evidence.  ECF No. 16 at 18-19.  The ALJ's consideration of the medical

17  opinion evidence was legally sufficient and supported by substantial evidence,

18  discussed *supra*.  The ALJ therefore properly excluded limitations assessed by those

19  providers whose opinions were less persuasive from the RFC and hypothetical to the

20  vocational expert.  The hypothetical contained the limitations the ALJ found credible

21  and supported by substantial evidence in the record.  The ALJ's reliance on

testimony the VE gave in response to the hypothetical was therefore proper. *See id.*; *Bayliss v. Barnhart*, 427 F. 3d 1211, 1217-18 (9th Cir. 2005).

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly,

1. Plaintiff's Motion for Summary Judgment, ECF No. 16, is DENIED.

2. Defendant's Motion for Summary Judgment, ECF No. 17, is GRANTED.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** October 18, 2021.

LONNY R. SUKO
Senior United States District Judge

ORDER - 28